2008 VT 74

# In re Miller Subdivision Final Plan
# (John Fothergill, Appellant)

[955 A.2d 1200]

No. 07-260

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 23, 2008

*John P. Riley* of *McKee, Giuliani & Cleveland, P.C.*, Montpelier, for Appellant.

*Christopher Miller*, Pro Se, Calais, and *David John Mullett* of *David John Mullett, P.C.*, Montpelier, for Appellee.

¶ 1. **Dooley, J.** Neighbor, an adjacent landowner, appeals a decision by the Environmental Court granting summary judgment in favor of applicant in a zoning dispute and giving him the right to subdivide his property and to relocate an outbuilding. On appeal, neighbor claims that: (1) the Environmental Court erred in concluding that applicant's property constitutes two separate lots divided by a right-of-way, and (2) the evidence did not support the Environmental Court's finding that applicant's main parcel does not drain into Curtis Pond. We reverse in part, affirm in part, and remand for further proceedings.

¶ 2. Applicant owns a 2.92-acre lot and a .05-acre lot in the Town of Calais. For the purpose of determining the assessed value of the property, the Calais Board of Listers currently identifies all of applicant's parcels as one lot. The small parcel, called the shoreland parcel, borders Curtis Pond, with 130 feet of shore front on the northwest, and Camp Road on the southwest. The road is very close to the pond. Thus, as applicant described it at oral argument: "it averages about five or six feet in depth; you can jump from the road into the pond." The large parcel, called the main parcel, lies across Camp Road from the shoreland parcel and is bordered by two public roads. Camp Road is a 16.5-foot wide private road that services twenty seasonal dwellings and six year-round residences, all further from the public road than applicant's land.

¶ 3. Applicant proposed to divide the large parcel into two, one 1.68-acre parcel and another 1.24-acre lot. Although each of the two new lots would abut Camp Road, the shoreland parcel would not be subdivided, and so the expectation is that it would be owned by the owner(s) of one of the subdivided lots.

¶ 4. The Town of Calais Land Use and Development Regulations (Regulations) establish seven zoning districts. Only the Shoreland District and the Village District are relevant to this dispute. The Shoreland District includes, among other things, all land within 800 feet of Curtis Pond. However, the Regulations provide an exception for property that does not border Curtis Pond and "does not drain into" the pond. The Shoreland District requires

that lots within the district be at least three acres in area. If applicant's main parcel is in the Shoreland District, the subdivision cannot occur because the minimum lot-size requirement cannot be met. If the land is not in the Shoreland District, it is in the Village District, which has no minimum lot-size requirement. The applicability of the lot-size requirements in this case depends entirely on whether the Shoreland District exception applies — that is, whether the land to be subdivided borders, and the water on the land drains into, Curtis Pond.

¶ 5. On March 30, 2006, the Calais Development Review Board granted applicant's conceptual subdivision plan, and neighbor appealed to the Environmental Court. The parties entered into a stipulation of facts and submitted the case for summary judgment on the issue of whether the land to be subdivided bordered Curtis Pond. Applicant argued that: (1) the shoreland parcel and main parcel were described and conveyed as two separate parcels in applicant's 1998 warranty deed, and (2) this Court's precedents support the notion that, for zoning purposes, a well-traveled right-of-way divides the parcels that it physically connects. Neighbor agreed that the threshold question was whether the proposed subdivision " 'borders' on Curtis Pond." However, in neighbor's view, the precedents cited by applicant cautioned that the existence of a right-of-way between parcels will not always mean separation. Furthermore, neighbor noted that, for tax purposes, the town lister's records treat the property as a single contiguous parcel with 130 feet of waterfront on Curtis Pond.

¶ 6. The Environmental Court granted partial summary judgment in favor of applicant, concluding:

> It is undisputed that [applicant's] Main Parcel, the only parcel [he] now proposes to subdivided [sic], does not border Curtis Pond. Thus, the first requirement of the exception [to the Shoreland District zoning regulations] is satisfied by the now undisputed evidence. But the second requirement of the exception to the general rule that would place this property in the Shoreland District [namely, the requirement that the property not drain into the water body] is the subject of a material factual dispute.

¶ 7. The court came to this conclusion without discussing the nature of Camp Road or of applicant's use of the shoreland

parcel. The court held an evidentiary hearing, ultimately concluding: "that the [applicant's] 2.92± acre parcel does not drain into the nearest body of water (Curtis Pond) and therefore fits within the applicable exception that removes the subject parcel from the Shoreland Zoning District . . . placing it instead within the Village District." Therefore, the court held that no minimum lot-size requirement applies to applicant's land and that the subdivision could go forward. The court, however, expressed its concern that future improvements to the driveway servicing one of the subdivided lots might cause water to flow onto Camp Road and "perhaps even into Curtis Pond," and conditioned its approval "upon future improvements to the Lot 1B driveway being completed so as to not cause water to flow into Curtis Pond."

¶ 8. Neighbor's first argument on appeal is that the court erred in finding that the land to be subdivided did not border Curtis Pond based solely on the existence of Camp Road between the shoreland parcel and the main parcel. We review summary judgment decisions de novo, applying the same standard of review as that applied by the trial court. *Peerless Ins. Co. v. Frederick*, 2004 VT 126, ¶ 10, 177 Vt. 441, 869 A.2d 112. "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "In applying this standard, we give the nonmoving party the benefit of all reasonable doubts and inferences." *Id.*

¶ 9. Although in a somewhat different context, we have addressed the issue of whether, for zoning purposes, commonly owned parcels separated by a private right-of-way are considered to be multiple lots or one lot. The issue first arose in *Wilcox v. Village of Manchester Zoning Board of Adjustment*, 159 Vt. 193, 616 A.2d 1137 (1992). In that case, we considered whether a lot could be conveyed in spite of being defined as undersized by relevant zoning requirements. According to these requirements, in order to be considered as a separate lot, a parcel had to be in " 'separate and non-affiliated ownership' " from surrounding lots, the main one of which was divided from the lot in question by a right-of-way. *Id.* at 195, 616 A.2d at 1138. We held that lots divided by a right-of-way could not be considered separate as a matter of law simply because they were noncontiguous. *Id.* at 197-98, 616 A.2d at 1140. We explicitly cautioned that "the existence ·of a right-of-way contiguous to and separating two parcels in common ownership will *not* automatically render those

parcels separate lots." *Id.* (emphasis added). We remanded for a determination as to whether the right-of-way "effectively" separated the parcels. *Id.* at 198, 616 A.2d at 1140; see also *In re Richards*, 2005 VT 23, ¶ 11, 178 Vt. 478, 872 A.2d 315 (mem.) (stating that under *Wilcox*, court must determine if "the *function* and *location* of the right-of-way . . . effectively prevents the use of the property as a single lot"); *Neun v. Town of Roxbury*, 150 Vt. 242, 244, 522 A.2d 408, 410 (1988) (discussing factors that must be considered in determining whether a property should be assessed as a single parcel, "including whether the property was conveyed in one deed, the character of the land and the purposes for which it is used, whether separately deeded tracts are contiguous, and whether the property currently functions as one tract for the owner").

¶ 10. We conclude that *Wilcox* and *Richards* apply and that these cases required the Environmental Court to evaluate whether the presence of Camp Road effectively separated the shoreland parcel from the main parcel such that it prevented them from functioning as a single lot. We note as well that the stipulation of facts on which the court acted provided very little information from which the court could make any determination on summary judgment. Thus, based on the record before us, we conclude that summary judgment was inappropriate.

¶ 11. In so holding, we recognize that the issue before us is related to the one in *Wilcox* but not identical to it. As in *Wilcox*, the nature of the right-of-way and the extent to which it separates the lots are relevant. Also relevant, as in *Richards*, is the extent to which the main and shoreland parcels function as a single parcel. Here, however, unlike in those cases, the ultimate issue is the applicability of zoning-district rules intended to protect land bordering a body of water. The Environmental Court must evaluate whether treating the shoreland parcel and the main parcel as separate lots undermines the purpose of the Shoreland District regulations. We remand for further proceedings on the issue of whether these regulations apply.

¶ 12. Next, we turn to neighbor's second claim on appeal — a challenge to the Environmental Court's findings as to whether surface water on the main parcel drains into Curtis Pond. On appeal, neighbor argues that the court's finding — that there was no evidence that surface water flows across Camp Road into

Curtis Pond — was clearly erroneous. Neighbor also contends that the Environmental Court improperly shifted the burden of proof to establish that surface water from the main parcel drains into Curtis Pond.

¶ 13. In our review of this issue, we must give deference to the Environmental Court's findings. We will not set aside the court's findings unless they are clearly erroneous, and we will uphold the court's conclusions as long as they are reasonably supported by the findings. See *Morgan v. Kroupa*, 167 Vt. 99, 104, 702 A.2d 630, 633 (1997). We view findings in the light most favorable to the judgment, disregarding modifying evidence, and they will not be disturbed merely because they are contradicted by substantial evidence; rather, neighbor must show that there is no credible evidence to support them. See *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991).

¶ 14. Applicant's expert, a licensed land surveyor, testified that in his professional opinion, it is "almost impossible for any of [applicant's] property to drain into Curtis Pond." He explained further that "there's a significant ridge that runs along Camp Road almost the entire length of the property, and . . . it drops down into a swale that brings the water down past the sugar house and right straight down [applicant's] property to Worcester Road." The expert marked a line on an exhibit to show the exact location of the swale he described, explaining that Camp Road essentially acts "as a barrier for water . . . so if water does get over into the road, it generally follows a wheel track right down the side of the road back to Worcester Road."

¶ 15. The Environmental Court also found persuasive applicant's descriptions of photos he took of his property while conducting an experiment with his garden hose. Applicant explained that he "took [a] garden hose" to the northernmost point on his land, and let the hose run "full bore for about an hour just to see what . . . it would look like." Applicant then exhibited a series of photos that showed water running down his property "to the Worcester Road." In other words, applicant's observations showed that water runoff from his property would likely run towards Worcester Road, rather than in the opposite direction to Camp Road and beyond, to Curtis Pond. This evidence corroborated the testimony of applicant's expert.

¶ 16. Based on the evidence as a whole, and acknowledging the contrary evidence offered by neighbor, the court made the following oral findings:

> I find that while there's been professional inferences that I found credible, but in balancing those with actual observations of the manner in which surface water acts and has historically acted on this property, I find that there has not been evidence presented in this proceeding that surface water flows from the [applicant's] property across . . . Camp Road and into Curtis Pond.

Thereafter, the court concluded in writing that the main parcel "does not drain into . . . Curtis Pond." The finding that the main parcel does not drain into Curtis Pond is not clearly erroneous, and we must uphold it. Nevertheless, neighbor argues that the court really found that neighbor presented no contrary evidence — a finding that neighbor contends would be clearly erroneous. We agree that neighbor presented contrary evidence, but the statement with which neighbor takes issue does not state a finding of fact. As stated above, we must construe the findings to support the conclusion flowing from them, and the court's conclusion was clear and against the neighbor's position. In this context, we find no reversible error.

¶ 17. Finally, we find unpersuasive neighbor's argument that the court improperly shifted the burden to neighbor to establish that surface water from the main parcel drains into Curtis Pond. Again, neighbor quotes the court's finding that "there has not been evidence presented in this proceeding that surface water flows from the [applicant's] property across Camp Road and into Curtis Pond" as evidence that "the court shifted the burden away from the Applicant, and upon [neighbor], to meet the burden of proof."

¶ 18. We disagree. The record, when read as a whole, clearly indicates that the court properly placed the burden on applicant to show that surface water does not run off his property and into Curtis Pond. Specifically, at the start of the hearing on the merits, the court stated: "I'm gonna ask the applicant to go first, because the burden of proof, generally, resides with the applicant." Additionally, the court clearly stated that "[a]s to surface water, I think that the evidence clearly supports the finding that I've just made, namely, that water does not flow."

¶ 19. For the foregoing reasons, we find no error with respect to the court's conclusion that surface water does not run off the main parcel into Curtis Pond.

*Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.*