2009 VT 98




In re Eastview at Middlebury,
Inc. (2008-166)


 


2009 VT 98


 


[Filed 01-Oct-2009]


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to notify
the Reporter of Decisions, Vermont Supreme Court, 109 State Street
,
 Montpelier,
 Vermont05609-0801
of any errors in order that corrections may be made before this opinion goes to
press.


 


 



 
 2009 VT 98

 

  



 
 No. 2008-166

 

  



 
 In re Eastview at Middlebury,
 Inc.

 

 
 
 Supreme Court

 

 
 
 (Miriam Roemischer, Appellant)

 

 
 
  

 

 
 
  

 

 
 
 On Appeal from

 

 
 
      

 

 
 
 Environmental Court

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 May Term, 2009

 

 
 
  

 

 
 
  

 

 
 
 Thomas
 S. Durkin, J.

 

 
 
  

 

 Stephanie J. Kaplan, East Calais, for Appellant.


 


Mark G. Hall and David M. Pocius of Paul Frank + Collins
P.C., Burlington, for Appellee.


 


 


PRESENT:  Reiber, C.J., Dooley, Johnson, Skoglund and
Burgess, JJ.


 


 


¶ 1.            
JOHNSON, J.  Dr. Miriam Roemischer appeals the Environmental
Court’s decision granting Eastview at Middlebury, Inc. a permit to construct a
residential retirement community (the Project) in Middlebury, Vermont.  We
affirm.


¶ 2.            
Eastview plans to build a residential retirement community on a
forty-acre portion of land in Middlebury.  The land is part of a larger
384-acre tract owned by Middlebury College.  The Project, as proposed,
would be sited adjacent to the Porter Hospital and the Porter Nursing Home and
near Dr. Roemischer’s residence.  The hospital and nursing home are
located on land leased on a long-term basis from the college.  Middlebury
College and Porter Medical Center, Inc., the owner and operator of the hospital
and the nursing home, purport to have agreed on a similar arrangement for the
Project whereby the college would lease the forty acres to Porter Medical
Center, which would in turn sublease the land to Eastview.  These
arrangements, however, have not yet been finalized.   


¶ 3.            
In November 2005, Eastview filed its Act 250 application with the
District 9 Environmental Commission.  While Eastview’s permit was before
the Commission, Dr. Roemischer, who lives across the street from the proposed
site, was granted party status to lodge her objections to the
development.  Notwithstanding her objections, on October 6, 2006, the
Commission issued Land Use Permit #9A0314, having found that the Project
complied with all applicable Act 250 criteria.  See 10 V.S.A. §
6086(a)(1)-(10) (setting forth criteria and noting that compliance with same a
prerequisite to a district commission’s grant of a permit).[1] 
The Commission’s order also concluded that, in addition to the forty acres
proposed to be leased to Eastview for the Project, a further 207 acres of the
original 384-acre tract owned by the college would be subject to Act 250
jurisdiction.  These 207 acres, would not, however, be subject to any of
the specific permit conditions imposed on the Project.[2] 
The permit’s preamble, however, states that it “applies to the land identified
in the land records of Middlebury, Vermont, as the subject of a deed to a 384.7
acre tract or tracts of land,” and condition 3 of the permit likewise declared
that “[n]o material or substantial changes shall be made to the 384.7 acre
tract or tracts of land without the written approval of the District
Environmental Commission.”  


¶ 4.            
Neither Dr. Roemischer nor Eastview were satisfied with the Commission’s
decision.  Dr. Roemischer timely appealed the grant of the permit to the
Environmental Court, arguing that the Project did not meet several Act 250
criteria.  Eastview, joined by Middlebury College and Porter
Medical Center, filed a cross-appeal, arguing, in the words of the
Environmental Court, that the Commission “[erred] in its determination
concerning the amount of land to be covered by its [p]ermit.”  Eastview
also contested Dr. Roemischer’s standing to challenge the Commission’s determination
on Criterion 9(B), 10 V.S.A. § 6086(a)(9)(B), and the Commission’s findings on
this criterion in light of its conclusions regarding the scope of its
jurisdiction and reach of the permit’s conditions.   


¶ 5.            
The Environmental Court found that Dr. Roemischer had preserved five
issues for appeal, each regarding a specific Act 250 criterion, and that
Eastview had preserved the claims set forth above for appeal.  More
specifically, the court concluded that Dr. Roemischer preserved challenges to
the Commission’s determinations regarding: Act 250 “Criterion 5, concerning the
proposed Project’s impact on traffic; Criterion 8, concerning the proposed
Project’s impact on aesthetics, scenic or natural beauty of the area; Criterion
9(A), concerning the Project’s impact upon area growth; Criterion 9(B),
concerning the Project’s impact upon primary agricultural soils; and Criterion
10, concerning the Project’s conformance with [Middlebury’s] Town Plan.”  


¶ 6.            
The Environmental Court’s decision was decidedly favorable to
Eastview.  Although it rejected Eastview’s argument that Dr. Roemischer
lacked party standing with respect to Criterion 9(B), it upheld the
Commission’s determinations on all five contested Act 250 criteria.  The
court further ruled that, contrary to the decision of the Commission, the
“permit’s encumbrance” is limited “to only the lands to be leased to Eastview
for its project, since no other portion of the [c]ollege’s lands will be
included in the Eastview development.”  It then remanded the matter to the
Commission to issue a permit allowing the Project to proceed.  


¶ 7.            
Dissatisfied with this outcome, Dr. Roemischer filed a motion requesting
that the Environmental Court alter its judgment.  In support of her
motion, she argued: (1) the court erroneously calculated the amount of primary
agricultural soils affected by the Project; (2) the court applied the wrong
version of Criterion 9(B); and (3) it was improper for the court to rely on
site observations without placing them on the record.  According to Dr.
Roemischer’s motion, applying the correct version of Criterion 9(B)—the version
in effect in 2005 when Eastview filed its application—is particularly
important.[3]  The 2005 version of Criterion
9(B), she contended, does not allow for offsite-mitigation agreements, such as
the one entered into by Eastview, the Vermont Agency of Agriculture, Food and
Markets, and the Vermont Housing and Conservation Board in connection with the
Project, as a means of complying with subsection (i) of Criterion 9(B).
 Additionally, the 2005 version of Criterion 9(B) requires a showing not
made by Eastview, that “the applicant can realize a reasonable rate of return
on the fair market value of [its] land only by devoting the primary
agricultural soils to uses which will significantly reduce their agricultural
potential.”  10 V.S.A. § 6086(a)(9)(B)(i).


¶ 8.            
The court disagreed with Dr. Roemischer’s first and third contentions,
as set forth above, but acknowledged that it had applied the wrong version of
Criterion 9(B).  It concluded that the correct version of Criterion
9(B), for purposes of evaluating Eastview’s permit, was that in effect in 2005
when Eastview first submitted its permit application.  Its earlier
decision had applied the 2007 version of the criterion.  Nevertheless, the
court held that, under either version, Eastview was entitled to its
permit.  


¶ 9.            
Following the Environmental Court’s ruling on her motion, Dr. Roemischer
appealed to this Court.  On appeal, she makes four principal arguments,
which we set forth in detail below and address, in turn, after setting forth
the applicable standard of review.  


¶ 10.        
We review decisions of the Environmental Court deferentially.  In
re Route 103 Quarry, 2008 VT 88, ¶4, 184 Vt. 283, 958 A.2d 694. 
Because the Environmental Court “determines the credibility of witnesses and
weighs the persuasive effect of evidence,” we will not overturn its factual
findings “unless, taking them in the light most favorable to the prevailing
party, they are clearly erroneous.”  Id.  This means that its
factual findings “will not be disturbed merely because they are contradicted by
substantial evidence.”  In re Miller Subdivision Final Plan, 2008
VT 74, ¶ 13, 184 Vt. 188, 955 A.2d 1200.  Instead, we will overturn such
findings only where the party contesting them demonstrates “that there is no
credible evidence to support them.”  Id.  Moreover, we will
uphold the court’s legal conclusions with respect to compliance with Act 250
criteria where such conclusions “are reasonably supported by the
findings.”  Id.  


I.


¶ 11.        
On appeal, Dr. Roemischer first argues that the Environmental Court
erred in overturning the Commission’s determination that the scope of the
permit embraced more than the forty-acre site on which the Project will be
built.  We disagree with Dr. Roemischer and affirm the result reached by
the Environmental Court, but on a different rationale.  See Bloomer v.
Gibson, 2006 VT 104, ¶ 26 n.4, 180 Vt. 397, 912 A.2d 424 (noting “that this
Court may affirm a trial court’s decision if the correct result is reached”
pursuant to a different rationale (citation omitted)).  


¶ 12.        
Initially, we note that there is no dispute that the Project is a
“development,” as that term is defined by 10 V.S.A § 6001(3)(A) (“
‘Development’ means the construction of improvements on a tract or tracts of
land, owned or controlled by a person, involving more than 10 acres of land
within a radius of five miles of any point on any involved land, for commercial
or industrial purposes.”).  It is beyond peradventure that erecting a
planned residential retirement community is “the construction of improvements .
. . for commercial . . . purposes,” and the forty-acre Project exceeds the
jurisdictional minimum acreage without even taking into consideration “involved
land.”  10 V.S.A. § 6001(3)(A); Envtl.Bd.R. 2(A)(F) (2004) (defining
“involved land”).  Thus, lacking an exemption, Eastview was required to
apply for an Act 250 permit, 10 V.S.A § 6081, and the District Environmental
Commission had initial jurisdiction to review the Project’s compliance with the
ten Act 250 criteria.  Id. § 6086(a).  Indeed, that the
Project triggered initial Act 250 jurisdiction is not in dispute.


¶ 13.        
The first issue is whether the Commission was entitled to assert
jurisdiction over the entire 384 acres, even though the project is limited to
forty acres.  Dr. Roemischer asserts that the permit condition imposed by
the Commission is supported by our decision in In re Stokes Communications
Corp., 164 Vt. 30, 664 A.2d 712 (1995).  That decision neither
controls nor is relevant here because the concept of involved land in Stokes
is addressed to whether Act 250 jurisdiction is triggered initially, not to the
proper scope of a permit.  In Stokes, we addressed a project
situated on an acre of leased land that was part of a larger, over ninety-acre
parcel that the developer did not own.  We affirmed the Environmental
Board’s assertion of initial jurisdiction only after concluding that the entire
ninety-acre parcel was “involved land.”  Id. at 36, 664 A.2d at
716.  Were we to have held otherwise, we reasoned, “developers could
circumvent the administrative process by simply leasing parcels which do not
exceed the jurisdictional thresholds.”  Id. at 37, 664 A.2d at
717.  Because Stokes relates to initial Act 250 jurisdiction, it
has no bearing on the Commission’s decision pertaining to the scope of the
permitted project. 


¶ 14.        
Instead, our analysis of the propriety of the Environmental Court’s
conclusion on the scope of the permit is guided by our maxim that permit
conditions and requirements must be reasonable, In re Eustance Act 250
Jurisdictional Opinion, 2009 VT 16, ¶ 19, ___ Vt. ___, 970 A.2d 1285, and
by decisions of the former Environmental Board establishing the meaning of a
“permitted project.”   


¶ 15.        
In Stonybrook Condominium Owner’s Association, the former
Environmental Board faced a situation substantially analogous to the one faced
here.  Declaratory Ruling #385, Findings of Fact, Conclusions of Law, and
Order at 9-21 (Vt. Envtl. Bd. May 18, 2001), at
http://www.nrb.state.vt.us/lup/decisions /2001/dr385-fco.pdf.  There, jurisdiction
over the project in question had already been triggered, and the Board faced
the question of “whether further activity on the tract—whether or not it has a
nexus to the initial construction on the tract—requires a permit
amendment.”  In Stonybrook, the Board ruled that answering the
question of whether an amendment is required in those circumstances entails
first determining the scope of the “permitted project,” generally a simple
matter involving the use of a bright line test: the “permitted project” is the
“entire tract of land on which the construction occurs, even if construction
only occurs on a portion of it.”  Id. at 14-17.  The Board
reasoned that this method “informs the world—the District Commission, the
permittee, and all other interested persons—as to the lands that will be
subject to scrutiny when further activities occur.”  Id. at
15.  Eastview sought an answer on essentially the same issue in its
cross-appeal at the Environmental Court in light of the conditions attached to
its permit and the Commission’s order, as set forth in detail above.  Supra,
¶ 13.  


¶ 16.        
Were there no exception to the bright-line rule, its application here
would appear to support the Commission’s ruling that the permit burdened the
entire 384-acre tract of land owned by Middlebury, its permit condition
prohibiting “material or substantial changes” on the tract “without the written
approval of the District Environmental Commission.”  The Board further
held in Stonybrook, however, that to mechanistically apply the “bright
line” rule would be “neither wise nor fair.”  Id. at 17.  To
avoid “absurd results,” the definition of a “permitted project” must “be
tempered by reason and reality.”  Id. at 17-18.  A “permitted
project,” therefore, may ultimately encompass “something less than the entire
tract” where construction on a portion of the tract bears an insufficient
relationship with, or nexus to, the rest of the tract.  Id. at
18.  


¶ 17.        
The Board elaborated on the requirement of a nexus between the permitted
project and the remainder of the tract in West River Acres, Inc.,
Findings of Fact, Conclusions of Law, and Order 8-10 (Vt. Envtl. Bd. July 16,
2004), at http://www.nrb.state.vt.us/lup /decisions/2004/2w1053-fco.pdf. 
There, the applicants owned several contiguous tracts of land and applied for a
permit to develop a horse-showing and riding business on one 54.2-acre
tract.  The Commission found that all horse showing and almost all horse
riding would occur on the 54.2-acre tract, although riders could ride on the
other tracts, if they so chose.  The Commission granted the permit but
deemed all of the contiguous tracts within the scope of the “permitted
project.”  The applicants appealed the permitted project ruling to the
Board.  The Board observed that the only environmental impact that the
development would have on neighboring tracts would be occasional horse riding
and observed that the West River Acres had no agreement allowing it to
otherwise use the other tracts.  It concluded, therefore, that there was not
a sufficient nexus to satisfy Stonybrook and limited the scope of the
“permitted project” to the 54.2-acre tract.


¶ 18.        
In this case, we agree with the Environmental Court’s conclusion that
including the entire 384-acre tract of land as within the scope of the
permitted project is unreasonable and would result in inequitable and absurd
results.  For example, construed literally, Condition 3 of the permit
could require Eastview to amend its permit by virtue of actions taken by third
parties amounting to a material or substantial change elsewhere on the tract
and completely unrelated to the Project.  After conducting an extensive
Act 250 review of the Project, the Environmental Court found that “no activity
connected to the Eastview Project will occur on or impact upon the remaining
[acreage]” of the 384-acre tract.  It further found that Eastview will not
“have authority to enter upon, develop or control any portion of [the tract] in
any way.”  The impact here is even less than the minimal impact found in West
River Acres, where the Board refused to define the scope of the permitted
project as encompassing contiguous tracts.  This situation reasonably
supports the Environmental Court
’s
conclusion that the scope of the permitted project here, and thus the permit
itself, cannot extend to the entire 384-acre tract.[4]  


II.


¶ 19.        
Dr. Roemischer next argues that the Environmental Court erred in ruling
that applicant was in compliance with Criterion 8.  More specifically, she
asserts that the court misapplied the applicable legal standard, improperly
sustained an objection to a portion of the testimony of her expert witness on
this criterion, and made a variety of other evidentiary determinations and
factual findings that, taken together, require us to reverse the court’s
conclusion on this criterion.  We find no merit in Dr. Roemischer’s
contentions.  


¶ 20.        
Criterion 8 mandates that, before the court may sanction the grant of an
Act 250 permit, it must conclude that the development “[w]ill not have an undue
adverse effect on the scenic or natural beauty of the area, aesthetics,
historic sites or rare and irreplaceable natural areas.”  10 V.S.A. §
6086(a)(8).  To guide its analysis, we observed in In re Times &
Seasons, LLC that the court should “employ[] a two-pronged approach,” the
so-called “Quechee test,” whereby it “determines if the proposed project
will have an adverse aesthetic impact, and if so, it considers whether the
adverse impact would be undue.” 2008 VT 7, ¶ 8, 183 Vt. 336, 950 A.2d 1189; see
also In re Halnon, 174 Vt. 514, 515, 811 A.2d 161, 163 (2002) (mem.)
(same).  We further noted that “[a]n adverse impact is considered undue if
the project (1) violates a clear, written community standard intended to
preserve the aesthetics or scenic, natural beauty of the area, (2) offends the
sensibilities of the average person, or (3) the applicant has failed to take
generally available mitigating steps that a reasonable person would take to
improve the harmony of the proposed project with its surroundings.  In
re Times & Seasons, LLC, 2008 VT 7, ¶ 8.  


¶ 21.        
In assessing the Project’s compliance with Criterion 8, the
Environmental Court correctly identified and applied the Quechee test as
set forth above.  The court began its analysis by assessing whether the
Project would have an adverse aesthetic impact on the area to the north of the
Project before addressing its aesthetic impact on the area south of the
Project.  With respect to the developed area north of the Project, the
court concluded that it would be a “suitable addition” and would not have an
adverse impact on the area’s aesthetics.  Regarding the undeveloped areas
south of the Project, however, the court determined that the Project would “be
a significant departure from the pre-existing natural beauty of the area” and
ruled that it would adversely impact the area’s aesthetic qualities.  But
the court concluded that the adverse impact would not be undue.  In
support of this conclusion, it first noted its finding that the Project, as
proposed, complies with all applicable Middlebury zoning regulations.  The
court also noted that Middlebury’s town plan contemplates the existence of the
Project.  Thus, the court did not have before it any evidence that the
Project specifically violated a written community standard.  Quite the
opposite, the court had evidence that the Project was in accordance with
Middlebury’s written standards, as reflected in its zoning ordinances and town
plan.  Additionally, the court found that the Project’s adverse effects on
the area’s aesthetics would not offend the sensibilities of the average person
in light of the Project’s architecture, siting, and landscaping, which
“incorporated . . . design characteristics from area homes” in a
manner that provides a complement and not an “offense to the area” and
preserved scenic views.  Finally, the court noted the numerous steps
Eastview took to mitigate the Project’s impact on the area’s aesthetic qualities. 
For example, it reduced the number of stand-alone cottages and further
clustered the remaining cottages to obscure less of the scenic view.  In
sum, the Environmental Court’s conclusion that the Project complied with
Criterion 8 is amply supported by its findings, and we must, therefore, uphold
it.  In re Miller, 2008 VT 74, ¶ 13.


¶ 22.        
Dr. Roemischer’s attempts to cast doubt on the court’s factual findings,
evidentiary rulings and, by extension, its ultimate legal conclusion regarding
the Project’s compliance with Criterion 8, are wholly unpersuasive.  For
example, she asserts that the Environmental Court improperly sustained
Eastview’s objection to the portion of the testimony of her expert witness, a
landscape architect, wherein he conclusorily opined that Eastview had not taken
generally available mitigating steps to minimize the Project’s aesthetic impact
on the surrounding area.  The expert’s testimony effectively stated a
legal conclusion—the Project could not satisfy the Quechee test and,
therefore, could not comply with Criterion 8.  While Dr. Roemischer
correctly observes that Vermont Rule of Evidence 704 generally allows an expert
to offer testimony as to “an ultimate issue to be decided by the trier of
fact,” her argument fails to acknowledge important qualifiers to this general
rule.  The proffered testimony must be “otherwise admissible,” V.R.E. 704,
and “helpful.”  Reporter’s Notes, V.R.E. 704.  Here, the
Environmental Court sustained Eastview’s objection to Dr. Roemischer’s expert’s
testimony because it “jumped to [a] legal conclusion.”   Such
testimony is inadmissible.  See Riess v. A.O. Smith Corp., 150 Vt.
527, 532, 556 A.2d 68, 72 (1988) (holding that questions “ask[ing] for the
ultimate conclusion at law” are inadmissible under V.R.E. 704).  The court
further noted that it did not “find [the expert’s testimony] helpful because
there is no substance there.”  We discern no error in the court’s exercise
of its discretion to sustain Eastview’s objection.  Even if the court had
erred in its ruling, Dr. Roemischer fails to explain why—in light of the fact
that her expert’s entire report on the aesthetic impact of the Project,
including his conclusion that the Project “would have an undue adverse impact
on [the area’s] scenic qualities,” was admitted into evidence—the failure to
admit the expert’s presumably cumulative testimony prejudiced her in this bench
trial.[5]  See Griffis v. Cedar Hill
Health Care Corp., 2008 VT 125, ¶ 18, ___ Vt. ___, 967 A.2d 1141 (“Rulings
on the admission or exclusion of evidence are highly discretionary, and we will
reverse only where discretion has been abused or withheld and prejudice has
resulted.”).       


¶ 23.        
Dr. Roemischer also puts forth a veritable laundry list of the
Environmental Court’s findings that she contends are contradicted either by her
testimony or that of Eastview’s witnesses and require reversal of the court’s
ruling on Criterion 8.  Dr. Roemischer misapprehends our standard of
review on appeal.  Our inquiry is limited to assessing whether there is any
credible evidence supporting the court’s findings, not whether they are
contradicted by substantial evidence.  In re Miller, 2008 VT 74, ¶
13.  Thus, even assuming that the record supports her assertion that these
findings are contradicted, she does not contend that they lack support by
credible evidence.  Absent such a showing, we will not disturb the
Environmental Court’s findings.  Id.  Further, were we to
construe her briefing on the matter to make this argument, she would still fail
in persuading us to overturn the Environmental Court’s legal conclusion
regarding Criterion 8.  She has made no attempt to explain why these
purportedly unsupported findings are material to the court’s analysis under the
Quechee test.  


¶ 24.        
She also contests the Environmental Court’s ruling to admit one page of
Eastview’s multi-page exhibit 25, which featured a computer rendering of the
Project.  She claims that Eastview’s witness was unable “to provide
critical foundation information about [this] computer simulation.”  Dr.
Roemischer does not elucidate how the court abused its discretion in admitting
this portion of the exhibit or how its admission prejudiced her.  We thus
see no basis for second-guessing the court’s ruling with respect to this
document.  See Griffis, 2008 VT 125, ¶ 18; see also Green
Mountain Marble Co., v. State Highway Bd., 130 Vt. 455, 468, 296 A.2d 198,
206 (1972) (“It is a well-established rule that the party who alleges error has
the burden of showing that he has been prejudiced thereby . . .
.  Otherwise it is presumed to be harmless, if it is error at all.”
(quotation omitted)).   


¶ 25.        
Finally, Dr. Roemischer makes a sweeping argument that the entire
testimony of all of Eastview’s experts on Criterion 8 was inadmissible under
Rule 702 and “should be stricken or disregarded” because their testimony “was
not based upon any demonstrated reliable principle or method.”  Her claim
is fundamentally flawed.  She has not demonstrated with specific
references to the record that she preserved this argument for appeal.  See
V.R.A.P. 28(a) (“The brief of the appellant shall contain . . .
(4)  [a]n argument . . . .  The argument shall
contain the issues presented [and] how the issues were preserved . . .
with citations to the . . . parts of the record relied on.”); cf. Quazzo
v. Quazzo, 136 Vt. 107, 111, 386 A.2d 638, 641 (1978) (“[W]e do not search
the record for error not adequately . . . referenced.”).  In
response to Eastview’s assertion that she did not, in fact, preserve the issue,
Dr. Roemischer, in her reply brief, directs us to her post-trial Proposed
Findings of Fact, Conclusions of Law, and Order wherein she makes the same
generalized argument that she does on appeal.  This does not suffice. 
To preserve an objection to testimony for appellate review, a party must lodge
a timely, substantive objection at trial.  See V.R.E. 103(a)(1) (“Error
may not be predicated upon a ruling which admits . . .  evidence
unless a substantial right of the party is affected, and . . . a
timely objection or motion to strike appears of record, stating the specific
ground of objection”); In re Estate of Peters, 171 Vt. 381, 390, 765
A.2d 468, 475 (2000) (“In order to preserve a claim of error in the
introduction of evidence, the party opposing the introduction must make a
timely objection or motion to strike.  This means that the objection must
have been made at the time the evidence was offered or the question was asked.”
(citations omitted)).   Neither Dr. Roemischer’s brief nor her reply
brief indicate where (or whether) she timely objected to these experts’
testimony.  We thus find her argument inadequately briefed and do not
reach its merits.  See In re Boardman, 2009 VT 42, ¶ 20, ___ Vt.
___, ___ A.2d ___ (per curiam) (where claim inadequately briefed, it “need not
be addressed on appeal”).  


III.


¶ 26.        
Dr. Roemischer next argues that the Environmental Court erred in its
determination that applicant was in compliance with Criterion 9(B).[6] 
Her argument has two main parts.  First, she asserts that the trial court
erred in finding compliance with three of Criterion 9(B)’s four
subsections.  Second, to the extent that the Environmental Court relied
upon Eastview’s mitigation agreement to demonstrate compliance with Criterion
9(B)(i), she claims that it erred in so doing because this subsection does not
explicitly contemplate compliance by means of such agreements.  Nor, Dr.
Roemischer argues, could the Environmental Court rely upon decisions of the
former Environmental Board concluding that such agreements could satisfy
Criterion 9(B)(i)’s requirements because these decisions, made in the context
of adjudicatory proceedings, were invalid; to make such a determination, Dr. Roemischer
insists that the Board needed to have promulgated a rule according to the
procedures specified in Vermont’s Administrative Procedure Act.  


¶ 27.        
The 2005 version of Criterion 9(B) reads as follows:


 
A permit will be granted for the development or subdivision of primary
agricultural soils only when it is demonstrated by the applicant that, in
addition to all other applicable criteria, either, the subdivision or
development will not significantly reduce the agricultural potential of the primary
agricultural soils; or,


 


  (i)
the applicant can realize a reasonable return on the fair market value of his
land only by devoting the primary agricultural soils to uses which will
significantly reduce their agricultural potential; and


 


 
(ii) there are no nonagricultural or secondary agricultural soils owned or
controlled by the applicant which are reasonably suited to the purpose; and


 


 
(iii) the subdivision or development has been planned to minimize the reduction
of agricultural potential by providing for reasonable population densities,
reasonable rates of growth, and the use of cluster planning and new community
planning designed to economize on the cost of roads, utilities and land usage;
and


 


 
                     
  


(Cite
as: 145 Vt. 496, *500, 494 A.2d 138, **141)


 


(iv)
the development or subdivision will not significantly interfere with or
jeopardize the continuation of agriculture or forestry on adjoining lands or
reduce their agricultural or forestry potential.  


 


10 V.S.A. §
6086(a)(9)(B)(i)-(iv).  A court assessing compliance with 9(B) employs a
two-part analysis.  In re Spear St. Assocs., 145 Vt. 496, 500, 494
A.2d 138, 141 (1985).  First, the court must evaluate “whether the
development will significantly reduce the agricultural potential of the primary
agricultural soils.”  Id.  If there is no significant impact,
the development satisfies the general criterion.  Id.  On the
other hand, if agricultural soils are affected significantly, the four
subcriteria must be satisfied to obtain a permit.  


¶ 28.        
Here, the parties do not contest the Environmental Court’s determination
that the Project will significantly reduce the agricultural potential of the
primary agricultural soils located on the land slated for its development but
instead quarrel over whether the Environmental Court correctly concluded that
the Project complies with certain of the subsections of the 2005 codification
of Criterion 9(B).  We address each contested subsection in turn.


¶ 29.        
The Environmental Court ruled in its decision on Dr. Roemischer’s
post-trial motion that the Project complied with Criterion 9(B)(i), reasoning
that mitigation agreements are an accepted basis for conformance with this
subsection.  We affirm the Environmental Court’s ruling on this
subsection, though for a different reason.  See Bloomer, 2006 VT
104, ¶ 26 n.4.  In so concluding, we note also that we need not decide
whether such agreements may offer a substitute means for complying with
Criterion 9(B)(i) because the record reveals that, even without such an
agreement, Eastview has demonstrated compliance with this subsection.  Nor
need we address Dr. Roemischer’s argument that the former Environmental Board
exceeded its authority in concluding that an offsite mitigation agreement could
provide an alternative means of complying with subsection (i).


¶ 30.        
As previously noted, Criterion 9(B)(i) requires Eastview to demonstrate
that it “can realize a reasonable return on the fair market value of [its] land
only by devoting the primary agricultural soils to uses which will
significantly reduce their agricultural potential.”  10 V.S.A §
6086(a)(9)(B)(i).  Based on the testimony of a representative of
Middlebury College, the parcel’s owner, the Environmental Court found in its
original decision, and reiterated in its decision on Dr. Roemischer’s
post-trial motion to alter, that the land in question has been used only
intermittently for agricultural purposes and attracts agricultural tenants only
at below-market-rate rents.  Thus we conclude that this finding was
supported by credible evidence, and we have little difficulty in further
holding that the below-market-rate rent generated by uses that do not reduce
the agricultural potential of the soils does not provide a “reasonable return
on the fair market value” of the parcel.   


¶ 31.        
Further, our decision in In re Times & Seasons does not
compel a contrary result, as Dr. Roemischer asserts.  In that case, we
concluded that we would not disturb the former Environmental Board’s factual
findings and ultimate conclusion that the applicant had not complied with
Criterion 9(B)(i) where the applicant had “simply reiterate[d] the same
conclusory arguments that it made before the Board.”  2008 VT 7, ¶
20.  We expressed no opinion with respect to Dr. Roemischer’s contention
that a conclusion that a development complies with subsection (i) must always
be preceded by an applicant affirmatively demonstrating (1) the fair market
value of the tract proposed for development, (2) a reasonable rate of return,
and (3) alternative projects that would have less of an impact on primary
agricultural soils as its proposed project—the showings found lacking by the
former Environmental Board in In re Times & Seasons.  Id.
¶ 18.  Put differently, the case cannot be read as setting forth a
required list of findings sufficient for a court to conclude that a development
has complied with Criterion 9(B)(i).  Thus, it is of no consequence that,
in assessing compliance with subsection (i), the Environmental Court did not
explicitly find, for example, that Eastview explored alternative projects with
lesser impacts on the parcel’s primary agricultural soils.  What matters
is that the factual finding the court did make—namely, that the parcel does not
support market-rate rents when used for agricultural purposes—reasonably
supports its conclusion that it does not provide a reasonable return.


¶ 32.        
With respect to subsection (iii) of Criterion 9(B), Dr. Roemischer
maintains that the Environmental Court erroneously concluded that the Project
complied with its requirement that a development be “planned to minimize the
reduction of agricultural potential” of the land on which it is located by,
among other things, “providing for reasonable population densities, reasonable
rates of growth, and the use of cluster planning and new community planning
designed to economize on the cost of roads, utilities and land usage.”  10
V.S.A. § 6086(a)(9)(B)(iii).  The court’s conclusion was erroneous,
insists Dr. Roemischer, primarily because “the court made no findings” with
respect to this subsection.  This assertion is demonstrably
incorrect.  


¶ 33.        
The Environmental Court made numerous findings that support its
conclusion that the Project complies with subsection (iii).  For example,
it found that the Project was specifically designed to incorporate cluster
planning, situating its thirty cottages in a cluster around the main building
thereby minimizing its overall footprint and its impact on primary agricultural
soils.  The court also found that, to serve the Project, municipal water
and sewer lines need only be extended from an adjacent lot and will not be
expanded beyond the development, economizing on the cost of establishing these
services, which, in any event will be borne by Eastview.  In turn, the
proposed minimal expansion of essential utilities also decreases the likelihood
that the Project will spur additional growth and development in the area. 
According to the Environmental Court, such growth is “encouraged when municipal
services are extended over a multi-lot distance, thereby making development
more attractive and affordable on the intervening lots.”  With respect to
roads, the Environmental Court found further attempts at economizing and
incorporating elements of community planning.  Specifically, it noted that
“the cottages will be accessed by the same drive that serves the [main
building] along private interior roads” that are “aligned close to the
clustered cottages” to encourage the Project’s residents “to walk to and from
the cottages and the [main building].”  Moreover, the court found that
Eastview will pay for the minimal improvements needed on nearby roads outside
the bounds of the development to mitigate the admittedly “minimal additional
traffic” the Project is expected to generate.  In light of these
findings, we concur with Eastview that the Environmental Court’s conclusion
that the Project satisfied Criterion 9(B)(iii) was amply supported.


¶ 34.        
To further bolster her argument that the Project fails to comply with
Criterion 9(B)(iii), Dr. Roemischer again cites In re Times & Seasons—this
time for the proposition that any development that will transform two-thirds of
the primary agricultural soils on the parcel slated for its development cannot
comply with this subsection.  Simply put, she misreads our decision in In
re Times & Seasons.  We noted that the former Environmental Board
concluded “that the loss of two-thirds of the primary agricultural soils on the
site constituted a significant reduction in the agricultural potential of such
soils.”  In re Times & Seasons, 2008 VT 7, ¶ 11.  The
Board did not make its finding in connection with deciding whether the
development in question complied with subsection (iii), nor did we rely on it
in that context.  Instead, the Board’s finding was made in the context of
assessing the threshold inquiry regarding compliance with Criterion
9(B)—whether the development would significantly reduce primary agricultural
soils.  See In re Spear St. Assocs., 145 Vt. at 500, 494 A.2d at
141.  Only after concluding that a development will indeed result in such
a reduction must one examine Criterion 9(B)’s subsections.  Dr.
Roemischer’s reliance on this portion of In re Times & Seasons is,
therefore, misplaced. 


¶ 35.        
Nor does the former Environmental Board’s decision in Southwestern
Vermont Health Care Corp, alter our opinion with respect to subsection
(iii).  Land Use Permit Application #8B0537, Findings of Fact, Conclusions
of Law, and Order, (Vt. Envtl. Bd. Feb. 22, 2001), at
http://www.nrb.state.vt.us/lup/decisions/2001/8b0537-eb-fco.pdf.  Dr.
Roemischer asserts that, given the similarities of scope and design between the
proposed development at issue in Southwestern Vermont and Eastview’s
proposal, we must conclude that the Project does not comply with Criterion
9(B)(iii) as did the Board.  Her argument does not succeed, however,
because she fails to detail the similarities of scope and design between the
projects that she maintains compel us to overturn the Environmental Court’s
conclusion regarding this subsection.  


¶ 36.        
Additionally, we find no merit in Dr. Roemischer’s assertion that the
Environmental Court erred in finding compliance with Criterion 9(B)(iv), which
requires that “the development or subdivision will not significantly interfere
with or jeopardize the continuation of agriculture . . . on adjoining
lands or reduce their agricultural . . . potential.”  10 V.S.A.
§ 6086(a)(9)(B)(iv).  The basis for her argument is twofold: first, the
court erred in assessing the credibility of the one of Eastview’s witnesses
whose testimony touched on this subsection; second, the court’s only finding
with respect to this subsection is insufficient to support its conclusion. 
Dr. Roemischer’s attempt to discredit the testimony on this point of Eastview’s
witness, a former land use and policy analyst with the Vermont Agency of
Agriculture, is hindered by conclusory argumentation, selective, out-of-context
references to the record, and, most significantly, our standard of
review.  While it is true that this witness answered in the negative when
asked if she conducted an “inquiry” into whether the Project complied with
Criterion 9(B)(iv), other portions of her testimony—although not referenced by
Dr. Roemischer—indicate that she visited the site several times in the process
of reviewing Eastview’s application and based her testimony on those
visits.  Also, it does not automatically follow, as Dr. Roemischer posits,
that the witness’ credibility was diminished merely because she did not speak
with a farmer who leases adjoining lands and did not happen to know that corn
had been grown on the land in the past.  Even if it did, or had Dr.
Roemischer explained why these purported flaws in the witness’ testimony should
be deemed deleterious to its overall weight, the Environmental Court enjoys
broad discretion in assessing the credibility and weight of a witness’
testimony, and we will not second-guess these determinations on appeal.  See
In re Route 103 Quarry, 2008 VT 88, ¶4.  Furthermore, regardless of
whether the Environmental Court’s finding that Eastview is committed to
imposing restrictions on residents’ right to object to future agricultural uses
of adjoining lands lacks support in the record, we find the evidence in support
of the Court’s numerous factual findings on subsection (iv) to be sufficient to
sustain its conclusion.  There was no error.  


IV.


¶ 37.        
Dr. Roemischer’s final argument is that the presiding judge acted with
bias towards her in his evidentiary rulings and otherwise, and the cumulative
effect of this bias was to deny her a fair trial.  After reviewing the
record, we conclude there is no support for this accusation.


Affirmed.



 
         
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 
 
         
  

 

 
 
  

 

 
 
  

 

 
 
 .        
  

 

 
 
  

 

 
 
 Associate
 Justice

 

  
























[1]  For reasons discussed below,
all references to this statutory provision are to the 2005 version.


 







[2]  The Commission declared: 


 


these [207±] acres
are subject to Commission jurisdiction and will require an amendment if there
are any material changes to [them] that “[have] a significant impact on any
finding, conclusion, term or condition of the [P]roject’s permit and which may
result in an impact with respect to any of the [Act 250] criteria.”  


 







[3]  The statute was amended in
2006.







[4] 
In her reply brief, Dr. Roemischer argues
that the Environmental Board lacked the administrative authority to interpret
“permitted project,” as it did in Stonybrook, without formal rulemaking
procedures.  We need not consider this claim, as it was first raised in
Dr. Roemischer’s reply brief, and arguments first raised in reply briefs are
not preserved.  Agency of Nat. Res. v. Glens Falls Ins. Co., 169 Vt. 426, 435,
736’ A.2d 768, 774 (1999).  Dr. Roemischer’s reply brief argues that Dr.
Roemischer raised the issue in her brief by including a footnote directing us
to a document that she had filed with the Environmental Court and also included
in the printed case.  Using a footnote to direct us to another document is
not briefing an issue.  In re Cent. Vt Pub. Serv. Corp., 2006
VT 70, ¶12, 180 Vt. 563, 905 A.2d 616 (mem.) (ruling that arguments made in
footnotes of briefs are not raised as error on appeal); cf. Graphic Controls
Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1385 (Fed.
Cir.1998) (finding an argument waived when a party used a footnote to
incorporate the argument by reference from the appendix, as such an argument
did not comply with F.R.A.P. 28(a)(6) (1998), which uses the same language as current
V.R.A.P 28(a)(4)).


 







[5]  We further note with respect to
prejudice that, notwithstanding the court’s decision to sustain Eastview’s
objection, the court specifically prompted and then allowed Dr. Roemischer’s
attorney to ask the expert questions regarding examples of “mitigation steps
that could have reasonably been taken in this project given the lay of the land
and the structure of the site that would serve the lot and the neighborhood
better.”  


 







[6]  The parties dispute which
version of Criterion 9(B) should apply as it was amended in 2006—after Eastview
filed its Act 250 permit application in November 2005.   Dr.
Roemischer insists that we apply the version of Criterion 9(B) in effect in
2005, whereas Eastview contends that we should look to the 2006 amended
version.  We agree with the Environmental Court that the only material
difference between the two versions, for purposes of this case, is that
subsection (i) of the 2005 version sets forth a requirement that the 2006
amended version does not—a view that neither party contests.  Thus, for
the sake of argument, we assume, without deciding, that the 2005 version of the
statute applies and assess the Project’s compliance with it.