*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-426

JUNE TERM, 2014

| | |
|---|---|
| In re Williamson Third Tier Application | } APPEALED FROM: |
| | } |
| | } Superior Court, |
| | } Environmental Division |
| | } |
| | } DOCKET NO. 55-4-12 Vtec |

Trial Judge: Thomas G. Walsh

In the above-entitled cause, the Clerk will enter:

This appeal involves a third tier structure built by applicant Michael Williamson on his home in the Town of Georgia. He appeals the environmental court's order affirming a decision of the Town's Zoning Board of Adjustment, which denied applicant's attempts to obtain approval for the structure because the third tier exceeded maximum height restrictions and was not eligible for any exemption. On appeal, applicant argues that the environmental court's construction of the relevant statutes and zoning regulations was in error and that his third tier is exempt from the height requirements as a solar collector or belfry, or can receive a variance as a renewable energy resource structure. Applicant also argues that the Town failed to properly issue a decision and his application should be deemed approved. We affirm.

The record reveals the following facts. Applicant owns property improved with a single-family home in the Town's L-1 Lakeshore District. The residence is located within 200' of the Lake Champlain shoreline. In 2009 or earlier, applicant constructed an octagon-shaped third-floor addition, which measured 11' wide and 9.5' tall.[1] The base of the tower is about 14' above grade. The addition has a wood-stud frame with a floor, walls, and windows. There are five generally north-facing windows, while the south-facing walls are solid. There is a twelve-inch diameter bell installed and hanging from the interior ceiling of the addition. The addition is accessed via a trap door and a step ladder. In 2009, photovoltaic collectors were installed on the exterior of the south side, but a wind storm damaged the collectors and they have not been replaced.

In September 2009, the Town zoning administrator notified applicant that the third tier required a permit. Applicant filed a zoning permit application with the Town for a "solar collector." The zoning administrator denied the application, concluding that applicant's structure did not comply with Town Regulation § 3140.4.9, which sets a maximum building height of 16' for new construction within 200' of Lake Champlain. Applicant then filed a zoning permit application for a "rooftop solar collector," which is exempt from the height restriction. The zoning administrator also denied that application for noncompliance with the maximum building

---

[1] This structure is referred to throughout this decision as the third tier.

height restriction, concluding that the third tier did not qualify for exemption as a rooftop solar collector. Applicant next filed a conditional use application with the Town seeking approval for his structure as a belfry. Applicant concurrently filed an application seeking a height variance for a "renewable energy resource structure." Applicant also appealed the denial of the zoning permit application to the zoning board. Following a public hearing, the zoning board issued a written denial of all applicant's requests on April 18, 2012.

Applicant appealed to the Environmental Division. He included eight questions to be decided, which all related to the interpretation of the relevant Town zoning regulations and statutes, and questioned whether applicant's third tier qualified as a belfry, renewable energy resource structure or rooftop solar collector. Applicant subsequently moved to amend his statement of questions to include "Did the Zoning Board of Adjustment properly render its decisions?" based on information that the zoning administrator had participated in the board's deliberative session. The court held a de novo hearing. The court concluded that applicant's third tier did not qualify as a rooftop solar collector, was not a belfry, and was not eligible for a variance as a renewable energy resource structure because it was not unusually difficult or unduly expensive for applicant to build a suitable structure in conformance with the Town regulations. The court granted applicant's motion to amend the statement of questions, but concluded that any impropriety during the board deliberations was cured by de novo review in the environmental court and that the Town timely rendered its decision. Applicant filed a notice of appeal to this Court.

On appeal, applicant renews the arguments made to the environmental court. Applicant's first argument centers on the building-height restriction in his zoning district. Applicant's property is located in the L-1 Lakeshore District. The Town zoning regulations state that the purpose of this district is to "protect the water quality of the lake and the recreational potential and natural beauty of the <u>shoreline</u>." The regulations set a maximum building height of 16' for new construction or additions within 200' of the shoreline to "preserve visual access to Lake Champlain."

On appeal, applicant argues that the height limitation of 16' does not have an appreciable impact on visual access to Lake Champlain and is therefore an impermissible regulation. The environmental court concluded that the height limitation of 16' was a permissible restriction. Zoning regulations are a valid exercise of the police power as long as the owner retains "some practical use of his land" and there exists "a public good or benefit of sufficient magnitude to justify the burdening of the affected property." <u>Hinsdale v. Vill. of Essex Junction</u>, 153 Vt. 618, 626 (1990) (quotation omitted). Zoning bylaws are presumed valid and will be affirmed unless the challenger demonstrates that the zoning is "clearly and beyond dispute . . . unreasonable, irrational, arbitrary or discriminatory." <u>McLaughry v. Town of Norwich</u>, 140 Vt. 49, 54 (1981) (quotation omitted).

Applicant accepts that the Town has the authority to restrict development to protect the view of Lake Champlain, but argues that the height restriction of 16' does not protect the view since few people can see above even 8' and the Town's concurrent regulation prohibiting removal of large trees restricts views. Applicant has failed to demonstrate that the height restriction lacks any reasonable relationship to the protection of shoreline views. See <u>City of Rutland v. Keiffer</u>, 124 Vt. 357, 359 (1964) (explaining that zoning ordinances must be "reasonably related to public health, safety, morals, or general welfare"). While applicant contends that views are already obstructed by existing buildings and by trees, which may not be

removed, these obstructions do not make the height restriction unreasonable. Whatever other view restrictions exist, it is reasonable for the Town to seek to limit additional obstructions. Further, the distinction between trees and buildings is a reasonable one. As to the exact height chosen by the Town, this was reasonable. It is undeniable that a shorter structure allows for greater view of the surrounding shore, both from the neighboring land and from the lakeside. The Town's choice of 16' was well within a reasonable limit and not invalid.

Applicant's next arguments concern the interpretation of town zoning regulations exempting certain structures from the height requirement. First, applicant contends that his third tier is exempt from the height requirement because it is a rooftop solar collector. This argument rests on the application of the exemptions in the zoning regulations, which provide: "All structures shall comply with the height restrictions in the district regulations. Chimneys, non-commercial antenna structures, rooftop solar collectors extending less than 10' above roofs, . . . are exempt from this requirement." According to applicant, because his third tier contains solar collectors, it is exempt from the height restriction.

Zoning regulations are interpreted "according to the general rules of statutory construction." In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 6, 175 Vt. 335. The paramount goal is to implement the intent of the enacting body and this is done by first looking at the regulation's plain meaning. Id. On appeal from the environmental court, this Court "will uphold the environmental court's construction of a zoning regulation unless the construction is clearly erroneous, arbitrary or capricious." In re John A. Russell Corp., 2003 VT 93, ¶ 35, 176 Vt. 520 (mem.) (quotation omitted).

The environmental court construed the words "rooftop solar collectors" as referring to solar panels and the mounting systems necessary for supporting solar panels, but not including an enclosed structure that also had solar panels. The court concluded that applicant's third tier was a structural addition and not a rooftop solar collector, and therefore not exempt from the height restriction.

The environmental court's construction of "rooftop solar collectors" was not clearly erroneous, arbitrary, or capricious. The environmental court applied a reasonable meaning, construing the exemption as allowing the installation of solar collectors that require some type of mounting system, which attaches the actual collectors to a rooftop. This is consistent with the apparent intent of the exemption—to allow solar collectors to be attached to a roof even if they exceed the height requirement. Applicant's third tier does not fit this definition. Applicant built an enclosed structure. Simply because applicant placed solar collectors on some portion of the structure does not transform it into a rooftop solar collector. There was no error.

Applicant's next argument is that the third tier qualifies as a belfry. The zoning regulations state that the zoning board can grant a conditional use permit for certain structures that exceed the maximum height restriction, including "[b]elfries."

The environmental court noted that belfries are commonly associated with churches and government buildings. Thus, the court construed the term belfry in the regulations as limited to such public buildings and not encompassing bells installed in a private residence. Applicant argues that the environmental court's interpretation of the term is erroneous because he contends that the meaning of belfry includes any tower that holds a bell and that there is no restriction on such tower being attached to a government building or church.

3

There are no grounds for reversal as the environmental court's interpretation of "belfries" was not clearly erroneous, arbitrary or capricious. See id. (setting forth standard of review). While the dictionary definitions offered by applicant do not require a belfry to be part of a church or government building, they certainly describe a structure that is not typically found in a residence, referring to a belfry as being attached to a church, being part of a steeple, or being used in defensive structures or warfare.[2] It was not erroneous for the environmental court to use its common sense and construe the use of "belfries" in the zoning regulations as limited to particular public buildings and not applicable to private residences. See In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (mem.) (explaining that zoning regulations should be construed with common sense and with legislative purpose in mind). As the environmental court noted, allowing applicant's third tier to qualify as a belfry would allow any landowner to exceed the maximum height restriction by simply putting a bell the noncomplying structure. This would contravene the intent of having a height restriction in the first place and such a result should be avoided. See Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986) (explaining that because paramount function is to give effect to legislative intent, literal sense of word must yield where it conflicts with legislative policy).

Applicant also contends that his third tier is an energy resource structure and therefore eligible for variance approval. Pursuant to statute, where a variance is requested for a structure "that is primarily a renewable energy resource structure," the environmental court can grant the variance if, among other things, "[i]t is unusually difficult or unduly expensive for the appellant to build a suitable renewable energy resource structure in conformance with the bylaws." 24 V.S.A. § 4469(b). The trial court agreed that applicant's third tier could be construed as a renewable energy resource structure because it collects or converts sunlight energy and waste heat, but concluded that it was not unusually difficult or unduly expensive to build suitable alternative structures in conformance with the regulations.[3] In particular, the court concluded that passive cooling would be more effectively accomplished through an electronically controlled skylight, passive heating through southerly windows in the lower part of the residence, and solar collection through a roof mounted system, or a ground-mounted system.

On appeal, applicant argues that the environmental court erred in concluding that there were reasonable alternatives that complied with the zoning regulations, because the court looked at each energy use individually rather than considering whether there was an alternative that could perform all the uses as effectively as the third tier. There was no error. It was consistent with the statutory language for the court to look at each proposed renewable energy use separately and determine if an inexpensive and relatively easy alternative existed. Further, there was credible evidence to support the court's finding that it is not unusually difficult or unduly expensive to build suitable renewable energy structures in conformance with the regulations. See In re Miller Subdivision Final Plan, 2008 VT 74, ¶ 13, 184 Vt. 188 (explaining that this Court gives deference to findings of environmental court and will affirm unless clearly

---

[2] At trial, the parties stipulated to the admission of numerous dictionary definitions of the word "belfry."

[3] The Town has filed a cross-appeal, arguing that the environmental court erred in concluding that the third tier meets the statutory requirement that it be "primarily a renewable energy resource structure." 24 V.S.A. § 4469(b). We need not reach this question because, even if the third tier qualifies as such a structure, we affirm the environmental court's conclusion that there are reasonable alternatives that would comply with the zoning regulations.

erroneous). Therefore, the environmental court did not err in concluding that applicant's third tier fails to meet the variance requirements.

Applicant's final arguments concern the manner in which the zoning board rendered its decision. The basic facts surrounding consideration by the zoning board are as follows. The zoning board held a public meeting on March 19, 2012 and discussed all three of applicant's pending requests: the conditional use application, the request for a variance, and the appeal of the zoning administrator's denial of the building permit. Applicant was present with his lawyer. In support of his applications, applicant presented the opinion of an expert. The board met again on April 2, 2012. The minutes indicate that at the end of that meeting, the board went into a deliberative session to continue deliberations on applicant's requests. The board issued a written denial of applicant's requests, which is dated April 18, 2012 and signed by the board chair.

Applicant first contends that the zoning board failed to issue a timely decision. Under 24 V.S.A. § 4464(b)(1), once a municipal panel has closed the proceedings on an application, it "shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing, and failure of the panel to issue a decision within this period shall be deemed approval and shall be effective on the 46th day." Applicant argues that there is insufficient evidence to demonstrate that the zoning board agreed on a decision prior to May 4, 2012, which is 45 days from the close of proceedings on March 19, 2012. The written decision, dated April 18, 2012, is signed by the zoning board chair and indicates the names of the board members "present and voting for approval of the written findings and decision." Applicant contends this must be in error since the written decision was not prepared prior to April 2, and the board did not meet after that before April 18.

The evidence supports the environmental court's finding that there was no deemed approval because the zoning board issued a timely decision on April 18, 2012. A written decision was issued that day, signed by the chair and indicating that the other board members were in agreement. That the zoning board did not hold a public meeting between April 2 and April 19, 2012 does not undermine the validity or timing of the decision. The board was not obligated to demonstrate that its members gathered in person to approve the written decision. Because the evidence demonstrates that the board issued a decision within forty-five days, there are no grounds to grant deemed approval.

Applicant also argues that reversal is warranted because the zoning administrator improperly participated in the zoning board's deliberative session on April 2, 2012. Applicant contends that the zoning administrator was an interested party having testified against applicant's appeal of the building permit denial, and should not have had ex parte access to the board's deliberations.

Certainly, applicant was entitled to a fair trial before an impartial decisionmaker when he appealed to, and petitioned, the zoning board. See In re JLD Props. of St. Albans, LLC, 2011 VT 87, ¶ 6, 190 Vt. 259 ("Municipal zoning hearings, like any quasi-judicial administrative proceedings, must faithfully observe the rudiments of fair play." (quotation omitted)). Assuming that the presence of the zoning administrator at the deliberative session impaired the impartiality of the proceedings, we nonetheless conclude that the appropriate remedy is not deemed approval of applicant's third tier, as asserted by applicant. Any harm caused by the presence of the zoning administrator was cured by the de novo review in the environmental court. Id. ¶ 10. De novo review cures all but the most egregious due process violations. Id. Here, the presence of the

5

zoning administrator during deliberations was a case-specific irregularity. It was not a systemic or structural problem that could not be cured by a de novo hearing. See id. (explaining that de novo review is inadequate to cure systemic or structural errors that "undermin[e] public confidence in the procedural framework as a whole"). Therefore, there are no grounds for reversal.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Geoffrey W. Crawford, Associate Justice