2008 VT 88

### In re Route 103 Quarry
### (J.P. Carrara and Sons, Inc.)

[958 A.2d 694]

No. 06-546

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Grearson, D.J., Specially Assigned**

Opinion Filed July 3, 2008

*Stephanie J. Kaplan*, East Calais, and *Phoebe Mills*, South Londonderry, for Appellants.

*James P. W. Goss* of *Kenlan, Schwiebert, Facey & Goss, P.C.*, and *Alan P. Biederman* of *Biederman Law Office*, Rutland, for Appellee.

¶ 1. **Skoglund, J.** Neighbors appeal the Environmental Court's decision granting J.P. Carrara and Sons, Inc. an amended permit to expand its quarry operation. We affirm.

¶ 2. Carrara has long operated a dolomite quarry on part of its fifty-nine-acre tract of land in Clarendon, Vermont. Carrara obtained its original Act 250 permit for the quarry operation in 1988 and has obtained several permit amendments since. Carrara's most recent permit amendment request, which is the subject of the instant litigation, seeks (1) to lower the quarry floor by an additional 105 feet, to a depth of 517 feet above sea level; (2) to increase the maximum level of allowed explosives per blast; (3) to increase the number of truck trips to and from the quarry; and (4) to extend its permit for fifteen years. Neighbors opposed the amended permit on several grounds.

¶ 3. In July 2005, the District 1 Environmental Commission issued an amended permit with conditions that were unsatisfactory to the parties. Carrara appealed the district commission's decision to the Environmental Court, and neighbors cross-appealed. Following a site visit and a six-day de novo hearing, the court granted Carrara an amended permit imposing several conditions but rejecting some of the conditions that had been imposed by the district commission. Neighbors appeal, arguing that the court erred in concluding that Carrara met its burden of demonstrating compliance with several of the Act 250 criteria. For the most part, neighbors' appeal consists of challenges to the sufficiency of the findings and conclusions rather than questions of law.

¶ 4. As neighbors acknowledge, because the trial court determines the credibility of witnesses and weighs the persuasive effect of evidence, this Court "will not disturb a trial court's factual findings unless, taking them in the light most favorable to the prevailing party, they are clearly erroneous." *In re Shantee Point, Inc.*, 174 Vt. 248, 263, 811 A.2d 1243, 1255 (2002). Moreover, our review of the Environmental Court's determination as to whether a proposed application would adversely affect surrounding lands is deferential. *In re John A. Russell Corp.*, 2003 VT 93, ¶ 30, 176 Vt. 520, 838 A.2d 906 (mem.); see *Sec'y, Vt. Agency of Natural Res. v. Handy Family Enters.*, 163 Vt. 476, 482, 660 A.2d 309, 313 (1995) (according deference to determinations made within expertise of environmental judge); *In re Denio*, 158 Vt. 230, 239, 608 A.2d 1166, 1171 (1992) (presuming validity of decisions made

within expertise of Environmental Board); cf. *In re Nehemiah Assocs.*, 168 Vt. 288, 292, 719 A.2d 34, 36 (1998) ("We accord deference to the Environmental Board's interpretations of Act 250, its own rules, and to the Board's specialized knowledge in the environmental field."). In short, our review of the Environmental Court's decision is limited; the neighbors must overcome a deferential standard of review to prevail on their challenge to the findings and conclusions underlying the court's decision.

¶ 5. Neighbors first argue that the court erred in concluding that the proposed quarry expansion complies with 10 V.S.A. § 6086(a)(9)(E), which, in relevant part, provides that a permit for the extraction of earth resources "will be granted" when the applicant demonstrates that "the extraction or processing operation and the disposal of waste will not have an unduly harmful impact upon the environment or surrounding land uses and development." See *id.* § 6088(a) (stating that applicant has burden to demonstrate compliance with Criterion 9, among others). According to neighbors, with respect to Criterion 9(E), the court ignored their reliable evidence, accepted evidence from Carrara that was not credible, ignored Carrara's history of noncompliance, and refused to require a test blast that would have allowed the court to understand the impact of granting Carrara's requested permit amendment.

¶ 6. Neighbors argued that allowing the requested permit amendment would have an undue adverse impact on their quality of life in that vibrations from the blasting would cause them stress and damage their homes. While acknowledging neighbors' concerns over the increased amount of explosives that would be allowed under the requested permit amendment, the court concluded that Carrara's past operation of the quarry had not been a major contributing factor to alleged damage to neighbors' homes, and that Carrara's continued blasting within professionally accepted limits would not have an undue adverse impact on neighbors in the future. In light of the neighbors' ongoing concerns, however, the court imposed conditions requiring Carrara: (1) to take structural surveys of adjacent properties, including video documentation, and to maintain records of those surveys, prior to conducting any future explosive blasts; (2) to maintain extensive reports for each blast for one year and to file such reports with the district commission within sixty days of the blast; (3) to provide blast notification to all adjacent property

owners; and (4) in the event Carrara intended to conduct a blast using more explosives than the maximum amount used in the past, to provide notice of at least two business days to give the district commission and neighbors an opportunity to observe the blast and employ the means to record any effects of the blast.

¶ 7. On appeal, neighbors argue that the court ignored relevant, uncontroverted, and credible evidence demonstrating that blasting at the quarry had an unduly harmful impact on their lives and properties. According to neighbors, the court ignored their testimony explaining the intensity of the blasts and the physical damage to their homes. Upon review of the record, we conclude that the court did not ignore neighbors' testimony, which was not uncontroverted.

¶ 8. Just as neighbors submitted testimony speculating that past blasting had caused physical damage to their mobile homes, Carrara submitted testimony suggesting other causes for the damage alleged by neighbors. With regard to its request to be allowed to increase the total amount of explosives for each blast, Carrara presented expert testimony explaining that (1) each blast consisted of a series of explosions separated by brief delays; (2) the key factor for determining adverse effects of a blast is the maximum amount of explosives used for each explosion between delays; and (3) the amended permit would allow an increase in the total amount of explosives used for each blast, but would not increase the maximum amount of explosives allowed in the then-current permit for each delayed explosion. Carrara also submitted expert testimony that its blasts, as permitted and conducted, had always been, and would continue to be under the amended permit, well within the nationally accepted standards established by the United States Bureau of Mines (USBM) for preventing adverse effects from blasting. The unrebutted testimony indicated that the USBM standards established safe limits for protecting even fragile structures and had been employed successfully throughout North America over the past thirty years.

¶ 9. Given undisputed evidence that the previously allowed and currently requested level of blasting satisfied, by a wide margin, USBM standards, and that compliance with such standards established a high degree of certainty that there would be no adverse effects from the blasting, the court granted the requested permit amendment with the stringent conditions noted

above. Given this record, we find no basis to reverse the court's determination that Carrara satisfied its burden of demonstrating compliance with Criterion 9(E).

¶ 10. Neighbors contend, however, that the court wrongly assumed that blasting within USBM standards would guarantee the absence of physical damage to neighboring properties. We disagree. The conditions the court imposed argue against any such guarantee.

¶ 11. Nevertheless, neighbors argue that the court erred by granting the amended permit request contingent upon Carrara monitoring its blasting, and by excluding evidence of Carrara's previous noncompliance with permit conditions. We find no error. Evidence at trial indicated that since at least 1994 the quarry had operated without any claim of a violation of its Act 250 permit. Further, as the court noted, previous permit violations that neighbors sought to introduce were related to Carrara's role as a landlord of the mobile home park adjoining the quarry and were remedied in cooperation with the Agency of Natural Resources. The court acted well within its discretion in concluding that evidence of past permit violations, without evidence of any pending violations or allegations of noncompliance, would not provide a legal foundation for denying Carrara's amended permit request.

¶ 12. Neighbors also complain that the court wrongly excluded certain statements made by adjacent property owners in prefiled testimony and then relied upon patently incredible testimony by one of Carrarra's witnesses concerning the possible causes of alleged physical damage to neighbors' homes. The court issued a detailed order accepting and rejecting various statements submitted in prefiled testimony describing the vulnerable nature of neighbors' property and the physical damage and other adverse effects allegedly caused by the blasting. The court also heard evidence indicating that the physical damage to neighbors' homes was most likely the result of time, inevitable wear and tear, deferred maintenance, improper set-up of the mobile homes, or other causes independent of the blasting. Neighbors would have this Court reweigh the evidence and find in their favor, but, as noted, it was the trial court's prerogative to assess the credibility of witnesses and weigh the evidence. *Shantee Point, Inc.*, 174 Vt. at 263, 811 A.2d at 1255 ("It is up to the trial court to determine the credibility of witnesses and to weigh the persuasive effect of evidence.").

¶ 13. Finally, with respect to Criterion 9(E), neighbors argue that the court erred by not compelling Carrara to conduct, at Carrara's expense for observation by the court and the parties' experts, a test blast using the maximum amount of explosives that would be allowed under Carrara's amended permit request. In support of their request for a test blast, neighbors cited V.R.C.P. 34, which allows a party to request entry onto the land of another party for the purpose of, inter alia, testing the land or anything thereon that might be subject to discovery in an action pending between the parties. In denying the motion, the court first noted that Carrara objected to the motion based on, among other things, the high cost of producing such a test, the potential delay in the court proceedings, and the uncertainty over the existence of conditions that would make such a blast feasible. The court stated that it was unaware of any authority compelling an applicant to conduct a test blast, noting that Rule 34 refers to the requesting party conducting tests. The court reasoned that Carrara retained the burden of demonstrating the absence of adverse effects and could use its own discretion in determining whether a test blast was necessary to satisfy its burden.

¶ 14. On appeal, rather than rely on Rule 34 as it did before the trial court, neighbors now contend that former Environmental Board Rule 20, which allowed the district commission to conduct tests to verify information in an application, provided the court with the authority to compel Carrara to conduct a test blast. We agree with neighbors that the court had the authority to compel a test blast, but we find no reversible error. Notwithstanding some language used by the court suggesting otherwise, the court's comments in denying neighbors' request indicate that it assumed it had discretion as to whether to compel a test blast. Thus, this is not a situation in which the court "failed to exercise its discretion altogether or exercised it for reasons that are clearly untenable or unreasonable." *Herald Ass'n v. Dean*, 174 Vt. 350, 360, 816 A.2d 469, 478 (2002).

¶ 15. A test blast in this particular case may have been helpful in resolving the issues before the court, given that the district commission had imposed limitations on the blasting after itself viewing two test blasts. Both test blasts viewed by the commission used only about half of the permitted amount of explosives for each delayed explosion, and only one of the tests used the maximum level of explosives per blast sought in the most recent

permit amendment request. After noting that the maximum amount of explosives per blast created noticeably greater vibrations and that Carrara had not informed the commission beforehand that it would not be using the maximum amount of explosives allowed for each delayed explosion, the commission restricted the amount of explosives per delay to the amount used in the test blasts and the total amount of explosives per blast to the amount allowed by the then-current permit. The court ultimately rejected these restrictions.

■ ¶ 16. Although the court would have acted within its discretion had it compelled Carrara to conduct a test blast, we decline to find reversible error in the court's refusal to do so. As the court noted, conducting a particular blast and gauging the amount of explosives to use depends on consideration of a number of factors. Refusing to compel a test blast of a particular magnitude outside the context of a determination that the actual circumstances require such a blast is not necessarily unreasonable, even considering the district commission's reaction to the previous test blasts. As the court stated, test blast or no test blast, Carrara had the burden to prove the absence of undue adverse impacts from the blasting, and the record contains sufficient evidence to support the court's conclusion that Carrara met that burden.

■ ¶ 17. Neighbors' next principal argument is that the court erred in concluding that Carrara's requested permit amendment complied with 10 V.S.A. § 6086(a)(2) and (3), which require that a development have "sufficient water available for [its] reasonably foreseeable needs" and will "not cause an unreasonable burden on an existing water supply, if one is to be utilized." According to neighbors, the court failed to make adequate findings on whether sufficient water was available for the quarry, and the evidence did not support the court's findings that granting the permit amendment would not create sediment in, or otherwise have a negative impact on, neighboring water supplies. We conclude that the court made adequate findings on these criteria, and that those findings are supported by sufficient evidence. See *Shantee Point, Inc.*, 174 Vt. at 263, 811 A.2d at 1255 ("We will not disturb a trial court's factual findings unless, taking them in the light most favorable to the prevailing party, they are clearly erroneous.").

¶ 18. With respect to Criterion 2, the court concluded that the quarry requires little or no water for its future operations and

that its foreseeable needs will be more than adequately met by the water available at the quarry site. Because groundwater and precipitation that enter the quarry pit must be pumped out, neighbors argue that the court should have determined whether the quarry would permanently remove water that otherwise would be available to neighboring wells. We find no merit to this argument. The evidence indicated that the quarry does not use water as part of its operations. As neighbors acknowledge and the court pointed out, Criterion 2 is considered in conjunction with Criterion 3, which specifically addresses whether a development will cause an unreasonable burden on neighboring water supplies.

¶ 19. In examining Criterion 3, the court concluded that the credible evidence offered at trial showed that deepening the quarry by another one hundred feet would not have a significant impact on neighboring wells. The court found that although deepening the quarry would cause a slight decrease in the measured head of the water in neighboring wells, the impact would be minimal and would not result in local water supplies failing to meet current demand. The court further concluded that the continued monitoring required of Carrara would assure that unanticipated burdens on area water supplies would be brought to the attention of adjacent property owners and the district commission. Under the court's order, the commission retained jurisdiction to address such a scenario by changing permit conditions, if necessary.

¶ 20. Neighbors contend, however, that their expert's testimony demonstrated flaws in the methodology used by Carrara's expert in claiming no impact on neighboring water supplies. Once again, neighbors are essentially asking this Court to reweigh the evidence. There was substantial evidence supporting the court's conclusion that deepening the quarry floor would have only a negligible impact on neighboring wells. Carrara's expert testified about pump tests indicating a negligible impact, and a hydrologist for the Agency of Natural Resources testified favorably on the methodology employed for the pump tests. The contravening evidence supplied by neighbors' expert did not compel the court to find in favor of neighbors.

¶ 21. Neighbors also argue that the court should have addressed, within the context of Criterion 3 rather than Criterion 1(B) dealing with water pollution, whether quarry blasting caused sediment to enter the water supply of an adjacent mobile home

park owned by Carrara. Again, we find no merit to this argument. The applicant has the burden of demonstrating compliance with both Criterion 1 and Criterion 3, 10 V.S.A. § 6088(a), although the issuance of certain permits from the Agency of Natural Resources creates a presumption of compliance with Criterion 1(B). The court noted the Agency's issuance of a discharge and an under-ground-injection-control permit to Carrara, but, notwithstanding neighbors' argument to the contrary, nothing in the record indicates that the court placed upon neighbors the burden of demonstrating that blasting caused the sediment in water at the mobile home park. Indeed, there was more than sufficient evidence indicating that any sediment in the water was more likely caused by the aging infrastructure or water treatment systems at the park or in the individual homes rather than by the blasting at the quarry.

¶ 22. Neighbors' last principal argument is that the court erred in finding compliance with Criterion 1(B), which, in relevant part, requires the applicant to demonstrate that the proposed project will not "involve the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B). Neighbors are concerned that blasting at the quarry will cause the remaining contaminants from a 1990 gasoline spill to spread to a nearby aquifer that feeds their wells, even though the spill is located on the other side of their property from the quarry. While deeming these concerns understandable, the court found no direct evidence indicating that activities at the quarry were contributing in any way to the contamination of neighboring wells from the 1990 gasoline spill, which no one claims was related to quarry operations. The court further found that routine past monitoring of neighboring wells showed that contaminants from the gasoline spill continued to dissipate, even as Carrara dug deeper into the quarry. We conclude that the evidence supports the court's findings and conclusions in this regard, and that neighbors' arguments to the contrary simply seek a reweighing of the evidence.

¶ 23. Finally, we need not address in detail neighbors' argument, first explicitly stated in their reply brief, that the court's evidentiary rulings demonstrated its bias against them. Nothing in the record supports this argument.

*Affirmed.*