STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

|  |  |
|---|---|
| In re Rinkers, Inc., d/b/a | } |
| Rinkers Communications, and | } Docket No. 302-12-08 Vtec |
| Beverly and Wendell Shepard | } |
| (Appeal of Shaw, et al.) | } |

Decision and Order on Motion for Reconsideration

Appellants Karen Shaw, Forrest Foster, Joe McCarthy, Jo-Anne McCarthy, Katherine Mitchell, and David Mitchell appealed from a decision of the District 7 Environmental Commission issuing Act 250 Land Use Permit No. 7C1219-2 to Appellee-Applicant Rinkers, Inc., d/b/a Rinkers Communications (Rinkers), as well as to landowners Beverly and Wendell Shepard, who have not entered an appearance in this appeal. Heather Bryant was granted "friend of the commission" status by the District Commission and retained that status as amicus curiae in the present appeal. Rural Newco, LLC, d/b/a AT&T Mobility (AT&T) also was given leave to participate in this appeal as amicus curiae.

Appellants and Ms. Bryant are represented by Jared M. Margolis, Esq.; Appellee-Applicant Rinkers is represented by L. Brooke Dingledine, Esq.; AT&T is represented by William J. Dodge, Esq. and Charlotte B. Ancel, Esq. The Land Use Panel of the Natural Resources Board did not enter an appearance in this matter, but has informational status through Melanie M. Kehne, Esq.; the Vermont Agency of Natural Resources did not enter an appearance in this matter, but has informational status through Judith Dillon, Esq.

On May 17, 2010, the Court issued a decision and order resolving the merits of this appeal. In re Rinkers, Inc., No. 302-12-08 Vtec (Vt. Envtl. Ct. May 17, 2010). The

1

only issue addressed in the decision was whether "the proposed project will or will not have an undue adverse effect on aesthetics" under Act 250 Criterion 8, 10 V.S.A. § 6086(a)(8). In re Rinkers, No. 302-12-08 Vtec, slip op. at 10. The Court concluded that the proposed tower "will not have an undue adverse effect on aesthetics," and therefore held that the project satisfied Act 250 Criterion 8. Id. at 24, 26. Accordingly, the Court granted Act 250 Land Use Permit No. 7C1219-2 to Applicants and remanded the case back to the District 7 Environmental Commission "solely for the purpose of completing the ministerial act of issuing the Act 250 [permit]." Id. at 26.

Appellants have now filed a Motion for Reconsideration of the Court's May 17, 2010 decision under V.R.C.P. 59(e).

Standard Applicable to a Motion for Reconsideration or to Alter or Amend a Judgment

Vermont Rule of Civil Procedure 59(e), which is substantially identical to Federal Rule 59(e), "gives the court broad power to alter or amend a judgment on motion within ten days after entry thereof." Drumheller v. Drumheller, 2009 VT 23, ¶ 28, 185 Vt. 417 (quoting V.R.C.P. 59, Reporter's Notes). Rule 59(e) is a codification of the trial court's "inherent power to open and correct, modify, or vacate its judgments." Id. (citing West v. West, 131 Vt. 621, 623 (1973)). Although there is no specific authorization in the civil rules or the rules applicable to the Environmental Division for a motion to "reconsider" a judgment, such motions are also treated as motions to amend or alter a judgment under V.R.C.P. 59(e). Appeal of Berezniak, No. 171-9-03 Vtec, slip op. at 3 (Vt. Envtl. Ct. Apr. 6, 2007) (Wright, J.).

A Rule 59(e) motion "allows the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enterprises, Inc., 164 Vt. 582, 588 (1996) (citing In re Kostenblatt, 161 Vt. 292, 302 (1994)). More specifically, the limited functions of a motion to alter or amend a

judgment are "to correct manifest errors of law or fact on which the decision was based, to allow the moving party to present newly discovered or previously unavailable evidence, to prevent manifest injustice, or to respond to an intervening change in the controlling law." In re Vanishing Brook Subdivision, No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.) (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 2810.0 (2d ed. 1995)); see also Appeal of Van Nostrand, Nos. 209-11-04 & 101-5-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Dec. 11, 2006) (Durkin, J.). Rule 59(e) should not be used to "relitigate old matters" or "raise arguments or present evidence that could have been raised prior to entry of the judgment," id., and mere disagreement between the moving party and the court is not grounds for reconsideration. In re Boutin PRD Amendment, No. 93-4-06 Vtec, slip op. at 1–2 (Vt. Envtl. Ct. May 18, 2007) (Wright, J.).

Motion for Reconsideration

Appellants ask the Court to alter its holding that while "Applicants have not taken mitigating steps to reduce the height of the proposed tower," Applicants have "tak[en] generally available mitigating steps to reduce the negative aesthetic impact of [the proposed] project" under the Quechee Lakes test. In re Rinkers, No. 302-12-08 Vtec, slip op. at 19–20. Appellants argue that the Court erred in finding that "Applicants ha[d] shown that reducing the height of the tower would frustrate both the project's purpose of providing coverage in all directions and [would frustrate] the Town Plan's preference for co-location of such services rather than the proliferation of towers," and that therefore a reduction in the height of the tower was not a "reasonably available" mitigating step. Id. at 20–21. Appellants argue that the "evidence demonstrated that the height of the tower could reasonably be reduced [to 100 feet] to mitigate the aesthetic impacts of the Project while still providing sufficient coverage." Appellants' Motion for Reconsideration, at 2–3 (May 27, 2010).

3

Upon determining that the proposed tower would have an adverse impact on the aesthetics of the area the Court employed the three part second step of the Quechee Lakes analysis to determine if that impact was undue. In re Rinkers, No. 302-12-08 Vtec, slip op. at 5. Under the third part of that analysis the Court examined "whether Applicants have 'failed to take generally available mitigating steps that a reasonable person would take to improve the harmony of the proposed project with its surroundings.'" In re Rinkers, No. 302-12-08 Vtec, slip op. at 19 (quoting In re Times & Seasons, 2008 VT 7, ¶ 8, 183 Vt. 336). For a mitigating step to be considered "generally available" it must be reasonably feasible and cannot frustrate either the purpose of the project or the goals of Act 250. Id. (citing In re Stokes Commc'ns Corp., 164 Vt. 30, 39 (1995)). The Court determined that while "Applicants [did] not take[] mitigating steps to reduce the height of the proposed tower from the maximum height permitted" they demonstrated "that reducing the height of the tower would frustrate both the project's purpose . . . and the Town Plan's preference for co-location of [wireless] services." In re Rinkers, No. 302-12-08 Vtec, slip op. at 20.

Appellants argue that the record does not support the Court's finding on either of these issues. Motion for Reconsideration at 2–4. Instead of the height of 180 feet approved in the municipal proceedings, as well as in this Act 250 decision, Appellants claim that a tower of 100 feet is sufficient to satisfy the wireless purposes of Applicants. Id. Appellants point to their own Supplemental Proposed Conclusions of Law at 13–15, as well as to the October 27 testimony of Mr. Rinker and Mr. Breuer, and to AT&T exhibits GG and II and Rinkers exhibits 10 and 29, in support of their argument that a shorter tower would not frustrate the purposes of Rinkers or AT&T and would still provide "enough space to accommodate the actual number of collocated users that the Applicant expects." Id. at 5. Appellants characterize the Court's conclusion as having been based on a "manifest error of fact" derived from the "unsupported and incorrect"

4

testimony of Mr. Rinker. Appellants' Response to Applicants' Opposition to Appellants' Motion for Reconsideration, at 3 (June 18, 2010).

In a non-jury trial such as this one, it is the responsibility of the trial judge not only to determine the credibility of witnesses but also to weigh the persuasive effect of all the evidence. In re Route 103 Quarry, 2008 VT 88, ¶ 4, 184 Vt. 283; see also Estate of George v. Vermont League of Cities and Towns, 2010 VT 1, ¶ 36.

The Court has fully reviewed the documentary evidence and its notes as to the testimony of each of the witnesses who addressed the issue of the adequacy of the tower height, and declines to alter its decision on this point. Although the evidence of course was conflicting on this issue, the Court's decision is supported by the evidence presented.

Appellants also argue that "to the extent that the Court's findings regarding the need for a 180 foot tower may be based on the height of the trees surrounding the proposed project" the evidence does not support the Court's conclusions regarding the height of the trees. Motion for Reconsideration at 5–6.

Appellants are correct that Rinkers' exhibits 9 and 36 show both the actual height of certain trees at or near the Shaw boundary and their height relative to the tower base, and that, as of 2009, the tallest of those specific trees was 68 feet in height, that is, that the 85-foot-height quoted in the decision already had been adjusted to reflect the height relative to the base of the proposed tower. However, the height of the trees was only used in the portion of the Court's decision, under the heading of "Location within the project property" at p. 20, that concluded that, "within the project property itself, Applicants have taken generally available mitigating steps to locate the tower to improve its harmony with its surroundings." On this point, regardless of the then-current height of the trees as of the time of trial, evidence was presented to the Court that the trees near the tower location, depending upon their direction from the tower base, included trees that ranged from approximately 50 feet to as much as 90 feet in

height, and that some were of species that could reach 100 feet in height at maturity. That portion of the Court's decision was not based on the current height of those specific trees, but instead on the anticipated height of the trees at maturity, relative to the proposed tower. Accordingly, the Court declines to alter its decision due to the error that the 85-foot height already included the relative height adjustment.

By contrast, the portion of the Court's decision that concluded that reducing the height of the tower is not a mitigating measure reasonably available to Applicants did not depend on the current height of the surrounding trees, but was based on the evidence regarding the height needed to propagate the users' signals in all directions over surrounding topography, not solely into the center of Hardwick Village, and to facilitate the co-location of present and potential tower users. Accordingly, the Court also declines to alter its decision on this point.


Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Reconsideration is DENIED.


Done at Berlin, Vermont, this 20th day of October, 2010.


_____
Merideth Wright
Environmental Judge